Good morning. Judge Joe Prior and I are really appreciative of Judge Kugler helping us out this morning and as he did yesterday, in addition to his busy work as Chief of the District for the Northern District of Alabama and his work for the Judicial Conference, we really appreciate it. We'll have less need of seeking the assistance of district judges from within our circuit now that we have the vacancy filled on our court, which is a good thing. One of the things you'll notice, Counsel, is that in the last couple of years and the our panels are all now made up of Eleventh Circuit judges with an occasional district judge from within the circuit who's familiar with our precedent. We no longer have judges visiting from other circuits. But we've also, with fewer cases on our oral argument calendar, just have had fewer cases during the week. I think we'll have a few more cases per week next year. But as a consequence of having fewer cases for the week, we only have one case to hear this morning. One of the cases settled. We've resolved another one based on intervening precedent. So you have our full attention this morning. We're familiar with your cases, with your case. We've read your briefs and the authority cited in them so you can get straight to the heart of your argument. Is it Salant? Salant. Salant. Ms. Salant, please come speak with us. Good morning. Good morning. May it please the Court, Counsel. My name is Megan Salant and I represent Mr. Steiger in this appeal. I've reserved eight minutes for my rebuttal. The lower court here abused its discretion when it sentenced Mr. Steiger to 20 years on his violation of probation. His sentence was procedurally unreasonable because the Court did not explain his chosen sentence as required by Gall, and his sentence was substantively unreasonable because the Court gave — it appears that the Court gave significant weight to the underlying new law violation conviction over the circumstances of his original Federal case. So what should be the District Court's concern when it is confronted with a violation of probation? Sure. So Chapter 7, the introduction to Chapter 7 in the Guidelines, which covers violations of probation and supervised release, advises that a District Court should give some consideration to the — I'm sorry, to the — what the new law violation might have been, the type of violation and those circumstances, but that it really — the violation sentence is about the breach of trust that the defendant has committed by violating his probation.  That's — and, of course, what the Guidelines say about that is advisory. Of course. But that gets me to my next question, which is, I understand why you're making the argument you're making, but really, what could be a more heinous breach of trust than what happened here? I'm not sure I can give you an example, but the introduction by the Commission specifically says that the facts of the underlying commission — I'm sorry, the underlying new law offense are not to be given — this is not a punishment for that. Yeah, I get that. That's the result — that's the province of a separate proceeding, right? Right. A court proceeding. Of course, that, too, is advisory. But within three months of probation, there are breaches of trust, and it's hard to imagine a more egregious breach of trust than murdering your — the mother of your child on the child's first birthday. Absolutely. I mean, this is horrific as it comes. The district court, it did — from a procedural reasonableness standpoint, it seemed to me the district court made clear that it had considered the Guidelines, it had considered all relevant case law, and this may be one of those obvious cases where not a lot of So, what's your reaction to that? Well, first, I'd just like to point out that Mr. Steiger did receive a life sentence in state court for the underlying murder. So, he has been punished for that, and he's been punished as harshly as he could have besides capital punishment, which wasn't on the table. So, he was punished to the fullest extent of the law for that offense. As far as what the court considered, it seems that the court cited — it cited generally to the sort of, like, cookie-cutter factors that it is instructed to consider. And I think that — we believe that when you go from a sentence of just probation, which I hardly — we hardly ever see — I mean, in Federal cases, that just doesn't happen very often. When you go from, you know, almost the bare minimum to the almost absolute maximum, there has to be some individual consideration. I think that this Court has said numerous times, as has the Supreme Court, that the defendants are entitled to have their sentences reviewed for reasonableness. And when the Court doesn't give any — any explanation as to the individual factors — in fact, the individual factors that the Court did cite to, the very few, the Court cited to the factors that were used to give him a downward variance at the original sentencing. So, if anything, one would think that — But we're in a very different position now. Of course. Counsel, you said that the judge gave him the absolute maximum. I'm sorry. Didn't he run those counts concurrently? That's — I'm sorry. Yes, I misspoke. He did not give him the maximum. He could have — the judge could have run those sentences concurrent — or, I'm sorry, consecutively, and he chose not to. So your — your client could have gotten 100 years as opposed to 20 years? Correct. 80, yes, sir. Eighty? I believe, yes, sir. I count five counts. Was there one more? Oh, I'm sorry. It is — it is 100. I think that somewhere in the record it was cited as 80, but you're correct. It was five counts. So your client could have gotten 100 years and instead got one-fifth of that? Correct. But I don't think that the difference — in Mr. Stiger's case, I don't think that the difference between 20 years and — and 100 years, when he's already serving a life sentence, is enough to account for the — for the fact that when he was originally sentenced, the court saw him in a completely different light. And I'm not saying that he — that the court shouldn't have imposed a 20-year sentence. I'm just saying that the court didn't do a good enough job explaining its reasoning so that this court can do its proper review to make — review to make sure that it was reasonable. Well, our precedent says that we can look to the record as a whole of the sentencing to determine what the district court's reasons were. And here the district court said, I've looked at all the evidence that was presented, I've considered the guidelines. What more did the district court need to do? I would have said any reference to the facts of Mr. Stiger's case, especially the aggregating factors. The court only referenced the mitigating factors from the original Federal offense. And are you relying on the need to explain an upward variance or variance? Yes. Absolutely. Yes. And this court — this court has recognized that in Pugh and Irie, that they — we have to have a way to know why the court did what it did. Yeah, but when the district court referred to what you described as the mitigating factors, it was doing so to explain why he had been given that very rare probation-only sentence, right? Correct. But those — I mean, right. So those factors existed. And then says, but we're in a — he's in a very different position today. Correct. But I would just argue that under Chapter 7, I know it's advisory, but that the court was required to weigh what happened at the original proceedings, the fact that he violated more heavily than the circumstances of the violation. Okay. You've saved your time for rebuttal, Ms. — Thank you. Ms. Acosta. Good morning. Winifred Acosta on behalf of the United States. May it please the Court. There was no abuse of discretion when the district court imposed the 20-year concurrent sentence after it revoked the appellant's probation. The district court did not have to disregard the facts of the violation. Breach of trust — as we just heard, the breach of trust, there is no more serious breach of trust than the type of crime that the appellant was convicted of in the state court. This heinous murder of the mother of his one-year-old child, apparently on the child's first birthday, there were some serious compelling factors which justified the upward variance. And the district court said everything which was necessary. It said expressly that it considered the guidelines, the policy statements, the court decisions. It said that it considered all of the other — 3553A factors. Yes, Your Honor. It considered all of the 3553A factors. And when you look at the context and the record as a whole, it clearly supports the sentence which was imposed. What was the reason the district court gave for the sentence it imposed? The court said what it considered, but it has to give a specific reason justifying the variance. The reasons were embedded in what the court considered, which was all of the 3553A factors. And when you look at the nature and the circumstances of the violation itself, this wasn't a violation where the appellant walked into a store and stole a bag of chips and was arrested and convicted of theft. This was a violation where he committed this reprehensible crime. And apparently there was evidence that he committed this crime while the victim was holding the baby. And the fact that — I mean, I certainly agree that there was about the most serious breach of trust that you could possibly have, and this is a horrible crime. But our case law requires that the district court give a specific reason. And while we could glean it from the record here, I'm concerned about our cases like Parks where we rejected a similar argument, which was basically that the reason could be discerned from the record as a whole. And in that case, we vacated or remanded for resentencing. In fact, we said we must remand. So how do you distinguish that from the situation here? Again, Your Honor, the district court stated that it considered all of the evidence. And the evidence in this case is just simply compelling enough to justify this concurrent 20-year sentence. When you look at the totality of the circumstances, the evidence that was presented at the violation hearing, even considering the fact that there were significant mitigating factors at the time of the original sentence, there were even more significant, more compelling aggravating factors here to justify going in a different — in a different direction and imposing an upward variance. As the government argued at the time of sentencing, the appellant had a lack of remorse. And the guideline range, the 12 to 18 months, did not reflect the seriousness of the violation. And it is our position the district court considered all of that in fashioning what it believed to be an appropriate sentence. Do you see the difference, though, in what I'm asking? I'm not asking what we can glean from the record that the district court considered. I'm asking for the reason that the district court gave, the specific reason for the violation. The specific reasons, Your Honor, the specific reasons were stated — there wasn't a laundry list of specific reasons. The explanation itself was based on what the court said that it considered in determining an appropriate sentence. And I'm reading from the record R222, page 36, slides one through four, where it talked about in determining an appropriate sentence, I've carefully considered not only the evidence that I've heard today, but also the matters presented during the course of the trial in the underlying case. And then the court continued on. But I fully considered all of the factors in Title 18 U.S.C. 3553A, as well as the applicable guidelines and the policy statements. So what the court did is it stated what it considered. There was no specification of — no specification beyond what the court considered. But again, it's our position that based on the context and based on the record itself, that was adequate. That was enough for this court to consider whether or not the district court considered the relevant 3553A factors and imposed a reasonable sentence. Do you have a position about whether what we've said in parts is consistent with what the Supreme Court has since said? The Supreme Court in the Chavez-Meza decision said that the sentencing judge need only set forth enough to satisfy the appellate court that he's considered the party's arguments and has a reasoned basis for exercising his own legal decision-making authority. Just how much of an explanation is required depends upon the circumstances of the particular case. Sometimes it's enough that the judge simply relied upon the record while making clear that he or she has considered the party's arguments and taken account of the 3553A factors, among others. Depending perhaps upon the legal arguments raised at sentencing, more explanation may be necessary. Do you have a view about that? Yes, Your Honor. In Chavez-Meza, the court also said it is true of most guideline sentences that a judge need not provide lengthy explanation if the context and the record make clear that the judge had a reasoned basis. And we believe that the record, the context and the record, as I've stated, made clear that the judge had a reasoned basis. There was a reasoned basis based on the totality of the circumstances as well as the 3553A factors. And that would be our position. We would also point out the fact that . . . That's a 2018 decision. Parks' is 2016, right? Yes, Your Honor. It is still our position that the context and the record satisfactorily explain the judge's reasoned basis. He can give us a lot. You know, just to say I considered the 3553A factors and the guidelines and the decisional law. That's basically all we've got here and the party's arguments. And that's correct, Your Honor. And we would distinguish . . . there was a case cited by the defense . . . I'm sorry, by the appellant Campbell where the court said that the trial court did not even mention the words guidelines. But here, the district court did mention it. Yeah, we don't have that. Yeah, we don't have that. Because he expressly stated that's what he considered. And we know that the district court . . . But the only thing we really have is that the district court said it considered it. That's really it. That's correct. Yes, Your Honor. And the fact that we know that it is apparent that the district court was well aware of the guideline range because the government, in its argument, stated that the 12 to 18 month guideline range was inadequate and did not reflect the serious nature of the violation. And then the defense also commented, referenced the guideline range, even though they did not give the numerical range, but they did reference it. So the record is clear that the court was well aware of the range and decided, again, based on the context and the 3553A factors, that that range was inadequate. And with that, Your Honor, we would also argue that plain view, I'm sorry, plain error applies because there was no objection to the procedural reasonableness at the time of the sentencing. And based on the totality of the circumstances, we would argue that the sentence was both procedurally reasonable as well as substantively reasonable. If there are no further questions, I yield to the court. Thank you. Thank you. Ms. Vaughn. Thank you. So I'd just like to first address the fact that just a brief review while I was sitting down. I have one, two, three, four, five, six published cases from this Court saying that the district court must explain a variance. And I think that the Chavez-Mena case from the Supreme Court actually has a lot of things that show that there was error in this case. For instance, one of the reasons that they found the subsequent sentence appropriate in Chavez-Mena was that at the original sentencing, the trial judge had given specific reasons for the sentence, for whatever the sentence that was imposed. And again, the reasons that might have been given at our original sentencing in this case were the ones that led to a very low sentence, not one that aggravated the sentence. So to, you know, we need to, the court needs to explain how it went from one to the other. The Supreme Court did say though in Chavez-Mena that sometimes it's enough that the judge simply relied upon the record while making clear that he or she has considered the party's arguments and taken account of the 3553A factors among others, right? It did say that. It did say that. But I think that this case is, they also talked about how that, how the reasoning, the actual articulated reasoning can be different depending on whether or not it was a conceptually simple case. I think there's not, I don't think that Mr. Steiger's case is conceptually simple. You know, he started out in December as a man with zero, one criminal conviction for leaving the scene of an accident with property damage and in the span of three months is alleged to have committed this murder. So. Been convicted. Excuse me, he was convicted. I was saying in February he was alleged. I'm sorry. Excuse me. Yes, he has been convicted. But to me, that's not simple. That's not an everyday case. That's pretty remarkable. That doesn't happen very often. Well, that's a straightforward, factual circumstance. But I don't understand why that, in terms of breach of trust, is anything but conceptually simple. Okay. Can you tell me why? Well, I don't know that I can. I think that's what the conceptual simpleness has to do with. Sure. I understand what the court is saying. I just, I do believe though that the district court sentence, it doesn't make sense under what the guidelines advise and what this court's published precedent requires. And I'd also like to, in response to counsel's. One of my frustrations about these cases, we just expedited the issuance of a mandate in a sentencing case, sent it back. And I think it's, what so often happens is, what we say is some technical issue ends up going back to the district court and nothing changes. I understand that. And to be honest, I think that's frustrating for us as well. Yeah. Each of our clients is an individual who deserves individual attention. And when we and the prosecutors present that evidence and all that information and the sentencing judge turns around and just says, I've considered everything, that's it. And then imposes a sentence, that's not great for our clients either. And it's not. Counsel, were you the lawyer in the case? I was not, Your Honor. Your office? My office was, yes. If that, and assuming that's correct, why didn't your attorney object? I'm not sure, Your Honor. And point it out to the district judge. I'm not sure, Your Honor. Give the district judge an opportunity to go ahead and express that. Right. Instead, we're dealing without that objection now. Is that correct? Correct. I just want to put that on the record. I think it's clear, but you could have avoided this, your office, by making an objection back at the sentencing. Absolutely, Your Honor. You're absolutely correct about that. Does that mean, as the government argues, that we should review any procedural error for plain error? I still think this Court should apply an abusive discretion, but I think that even under a harmless error review, I think that we can, Mr. Steiger can satisfy that. Even under a plain error review? I'm sorry. I meant plain error. Yes, excuse me. So the error is that the Court didn't give any explanation for a very huge variance. And obviously, I think that the Supreme Court has made it clear that there's no, like, there's no special thing that they have to say. There's no special amount of reasoning that has to be given. But if the variance is sufficient, the explanation has to meet that. So the Court didn't do that, so that's an error. It's clear on the face of the plain. It's clear on the face of the record that the Court didn't give that explanation. And the substantial right is that Mr. Steiger has a right to have his sentence be explained to him and then reviewed by this Court. Chavez Mania, they talked about the Supreme Court discussed the integrity of, you know, why it's important that appellate courts be able to review those sentences, these sentences, even if they do seem simple. The appellate, you know, we have to show the community that's witnessing the legal process that each defendant is entitled to that review. If there are no further questions, I just ask that you reverse and remand for resentencing. Thank you, Ms. Saline. We'll be in recess until tomorrow. All rise.